No. 13-2492

_____

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

_____

**ERNIE S. BALDWIN,**

Plaintiff-Appellant

v.

**DUKE ENERGY CORPORATION and DUKE ENERGY BUSINESS SERVICES LLC,**

Defendants-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA, CHARLOTTE DIVISION

## APPELLANT'S OPENING BRIEF

Jonathan Wall
Higgins Benjamin, PLLC
101 W. Friendly Ave., Suite 500
Greensboro, NC  27401
(336) 273-1600
jwall@greensborolaw.com

Kenneth Love Jr.
Love & Dillenback, PLLC
P.O. Box 779
Rural Hall, NC  27405
(336) 210-1853
kennethl@ldlawnc.com

*Co-Counsel for Appellant*

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................i

TABLE OF CASES .....................................................................iii

STATEMENT OF JURISDICTION...........................................1

ISSUES ON APPEAL ....................................................................2

INTRODUCTION ..........................................................................3

STATEMENT OF CASE ................................................................5

STATEMENT OF FACTS ..............................................................6

SUMMARY OF ARGUMENT .....................................................11

ARGUMENT ...............................................................................12

I.      STANDARD OF REVIEW ..................................................12

II.     APPELLANT AMPLY DEMONSTRATES RETLALIATION
        PROHIBITED BY FMLA....................................................14

        A.   APPELLANT ENGAGED IN PROTECTED ACTIVITY.........16

        B.   APPELLANT SUFFERED ADVERE EMPLOYMENT
             ACTIONS ...............................................................16

        C.   TEMPORAL PROXIMITY BETWEEN PROTECTED
             ACTIVITIES AND ADVERSE EMPLOYMENT ACTIONS
             SUFFICIENT TO DEMIONSTRATE CAUSAL
             CONNECTIONS AND BUTTRESSED BY OTHER
             EVIDENCE...............................................................17

        D.   DISTRICT COURT ERRED IN MAKING FINDING OF
             INSUBORDINATION AND IN WITHDRAWING ISSUE
             FROM JURY ...........................................................19

III.    APPELLANT ESTABLISHES ADA VIOLATIONS BASED
        ON PERCEIVED DISABILITY ........................................................24

IV.     APPELLANT ESTABLISHES TITLE VII
        RELIGIOUS DISCRIMINATION CLAIM ........................................27

CONCLUSION ................................................................................................ 27

REQUEST FOR ORAL ARGUMENT ........................................................... 28

SIGNATURE OF COUNSEL ......................................................................... 28

CERTIFCATE OF COMPLIANCE ................................................................ 29

CERTIFICATE OF SERVICE ....................................................................... 30

# TABLE OF CASES AND AUTHORITY

## CASES

*Averette v. Diasorin, Inc.,* No. 3:11CV203, 2011 U.S. Dist.
    LEXIS 93761, 2011 WL 3667218, (W.D.N.C. Aug. 22, 2011).............. 20
*Ballinger v. North* Carolina *Agric. Extension Serv.,* 815 F.2d 1001
    (4th Cir. 1987)................................................................................ 13
*Beall v.* Abbott *Labs.* 130 F.3d 614 (4th Cir. 1997) ..................................... 13
*Berwick v. Celotex Corp.,* 736 F.2d 946 (4th Cir. 1984)............................. 12
*Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53(2006)............. 16
*Campbell v. Hewitt Coleman & Assoc.,* 21 F.3d 52 (4th Cir. 1994) ........... 13
*Celotex Corp. v. Catrett,* 477 U.S. 317 (*1986*) .......................................... 12
*Cline v. Wal-Mart Stores, Inc.*, *144* F.3d 294(4th Cir.1998)......................... 15
*Cole v. Cole*, 633 F.2d 1083, 1092 (4th Cir. 1980) ..................................... 14
*Desert Palace, Inc. v. Costa,*539 U.S. 90 (2003)......................................... 14
*Dotson v. Pfizer, Inc.*, 558 F.3d 284, 294-295 (4th Cir. 2009),
    *cert denied*, 130 S. Ct. 114 (2009)............................................................ 21
*Gross v.* FBL *Fin. Servs., Inc.,* 557 U.S. 167 (2009)................................... 20
*Harmer v. Virginia Elec. & Power Co.,* 831 F. Supp. 1300 (E.D. Va. 1993)13
*Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151(1st Cir. 1998)................. 21
*Hughes v. B/E Aerospace, Inc.*, No. 1:12-cv-717, 2014 U.S. Dist. LEXIS
    29535 (M.D.N.C. Mar. 7, 2014) ............................................................ 20
*King v. Preferred Technical Group*, 166 F.3d 887 (7th Cir.1999).............. 14
*Martinson v. Kinney Shoe Corp.,* 104 F.3d 683 (4th Cir.1997) ................. 24
*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)......................... 15
*Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496 (4th Cir. 2001) ............. 15, 16
*Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.,*
    381 F.2d 245, 249 (4th Cir. 1967) .......................................................... 13
*Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989)................................... 20
*Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133 (2000) ......... 13, 14
*Rogers v. Missouri Pacific R.* Co., 352 U.S. 500 (1957).............................. 14
*Shaw v. Stroud,* 13 F.3d 791 (4th Cir.1994) ............................................... 12
*Tcherepnin v. Knight,* 389 U.S. 332 (1967)................................................ 21
*Tinsley v. First Union Nat'l Bank,* 155 F.3d 435 (4th Cir. 1998)................ 13
*Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 133 S. Ct. 2517 (2013)................... 20

# OTHER AUTHORITIES

28 U.S.C. § 1291 ..................................................................................... 1
28 U.S.C. § 1331 ..................................................................................... 1
28 U.S.C. § 1337 ..................................................................................... 1
29 U.S.C. § 2601 *et seq.*................................................................. 1, 5, 14
29 U.S.C. § 2615 .................................................................................... 15
42 U.S.C. § 2000e *et seq*................................................................ 1, 5 20
42 U.S.C. § 12101 *et seq*................................................................... 1, 5
42 U.S.C. § 12102 ............................................................................ 24, 25
42 U.S.C. § 12112(a) ............................................................................. 24

29 C.F.R. § 825.220 ......................................................................... 15, 20
29 C.F.R. § 1630 .................................................................................... 11

Fed. R. Civ. P. 56 ............................................................................... 1, 12

## STATEMENT OF JURISDICTION

Ernie Baldwin (hereinafter "Appellant") filed his complaint against Duke Energy Corporation and Duke Energy Business Services, LLC (hereinafter "Appellees") alleging violations of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq*.; the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*.; and the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.* Baldwin also asserted a North Carolina common law tort claim for wrongful discharge. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337, the U.S. District Court for the Western District of North Carolina had jurisdiction over the Complaint.

On September 18, 2013, Appellees filed a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. On November 15, 2013, the district court entered an opinion granting Appellees' motion (pp.1721-1739 of the Joint Appendix, hereinafter abbreviated "JA"). The November 15, 2013 order was a Final Order pursuant to 28 U.S.C. § 1291 in that it ended litigation of the case on the merits. On December 12, 2013, within 30 days of the district court's Final Order, Baldwin filed his Notice of Appeal with the District Court. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## ISSUES ON APPEAL

1.     In determining whether Appellant stated a sufficient claim of retaliation for filing an administrative complaint under Title VII and the FMLA (JA1733-37), did the district court err in applying a "but-for" causation standard, when temporal proximity and other facts clearly established a causal connection between the uncontroverted protected activity and the adverse employment actions?

2.     In determining whether Appellant was retaliated against for taking FMLA leave (JA1736-37), did the district court err in concluding that minor comments in annual performance reviews' "areas for improvement" section conclusively establish a "predated" record of inadequate work performance that categorically forecloses any later claim of retaliation?

3.     In determining that Appellant stated no claim for discrimination based on a perceived disability, did the district court err in considering *only* Appellant's inability to sit for long periods, and in ignoring his supervisor's knowledge of Appellant's history of cancer, chemotherapy drugs, higher probability of developing leukemia, impending travel to Houston for cancer-related testing, recent medical leaves of absence, and other facts from which a factfinder could easily determine that Appellees perceived Appellant to have disability?

4.    Where Appellant demonstrated that his supervisor was present and responded to a joke told identifying Appellant as Jewish, did the District Court err in finding a factfinder could not find or infer that the supervisor knew Appellant was Jewish?

5.    Whether the district court in (a) adopting Appellees' arguments requiring Appellant "to establish" and "to prove" several fact allegations although Appellant had presented ample evidence from which a jury could find for Appellant and (b) in failing to view the evidence in the light most favorable to Appellant as non-moving party in regard to other material issues?

## INTRODUCTION

Ernie Baldwin ("Appellant") is a cancer survivor who worked as a computer programmer for over 15 years with Duke Energy Corporation and Duke Energy Business Services, LLC (hereinafter "Appellees").  Until 2009, his work was uniformly praised, and he repeatedly "fully and consistently met the high expectations of his position."  In May 2009, Appellant's supervisor learned that Appellant is Jewish, and from that time, she became more distant and critical of Appellant.

In late 2009, Appellant took FMLA-approved leave for a cancer-related surgery.  After he returned from FMLA leave, his supervisor presented him with his first scathing, unfair performance review.  Utilizing internal grievance

procedures, several statements and conclusions in the appraisal were found to be untrue and unsupported, and the appraisal was ultimately reformed more favorably for Appellant.

Again in 2010, Appellant required a second FMLA leave for surgery.  He was allowed to return to work, but because the corrective surgeries to his genital area prevented him from sitting for long periods, his doctor wrote instructions for him to work from home, which Appellant had done without incident in the past.  After his return from FMLA leave, Appellant filed a "recourse" or grievance, contending he was being discriminated against on account of his religion, his FMLA leave, and his disability-related work accommodations.

Appellant submitted Return-to-Work forms completed and signed by his physician indicating as a work restriction that Appellant should "work from home" and not sit for over 30 minutes at a time.  The last such physician form, JA608, indicated that these restrictions should continue *through* August 19, 2010.   Instead of taking the Appellant Physician's note at face value, Appellees questioned Appellant's need to work from home.  Counsel for both parties communicated in an effort to ascertain whether or not Appellees could offer a reasonable accommodation to Appellant.

In August 2010, while counsel were attempting to communicate on these issues, Appellees nevertheless ordered Appellant to work from the office rather

from home.  Appellant wrote back indicating that he thought the two attorneys were sorting through the issues, and that he would follow their advice.  Without a verbal or written warning – or any other hallmark of a progressive disciplinary policy – Appellees unilaterally aborted the give-and-take process anticipated by the ADA, ignored Appellant's Return-to-Work restriction, and used the circumstances as pretext to fire Appellant, purportedly for "insubordination."

## STATEMENT OF CASE

On November 11, 2011, Appellant initiated this action in Mecklenburg County Superior Court (JA10, JA20-27), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*., the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq*., and a North Carolina common law tort claim for wrongful discharge.  On April 4, 2012, Defendant removed the case to the United States District Court for the Western District of North Carolina, asserting the existence of federal question subject matter jurisdiction, and removal was not challenged.

Appellant filed an Amended Complaint (JA32-62) on April 27, 2012, to which Appellees answered (JA63-86).  Appellees moved to dismiss Appellant's ADA claims, and the district denied the motion (JA119-130), finding the facts as alleged sufficiently set forth a claim of ADA violations and retaliation (JA123-24).

On September 13, 2013, Appellees filed a Motion for Summary Judgment (JA204-209), which the district court granted on November 15, 2013 (JA-1721-39). Appellants filed a Notice of Appeal on December 12, 2013.

## STATEMENT OF FACTS

Appellant began employment with Appellees as an independent contractor in 1993. He served in this capacity until 2005, when Appellees invited him to become a permanent employee. He worked as a Senior Application Analyst and was required to analyze, investigate, and remediate problems with his assigned applications, as well as to develop and enhance functions associated with assigned applications and Interfaces. (JA67, 262, 472, 507).

Appellant consistently received strong performance appraisals. For calendar year 2005, Appellant received a "fully meets" overall performance review from his supervisor Kaye White. (JA498-502). Again for 2006, Appellant's positive performance review stated that he "met performance expectations in the overall quality and quality of work performed." (JA503-505). In 2008, Appellant received a performance review for the year ending February 2008. The Overall Performance Summary stated Appellant 's "performance *fully and consistently* met the high expectations of his position." (emphasis added) (JA508-510).

In March 2009, Appellant was transferred to the Nuclear Energy, Safety, and Protections Applications department, where he held the same job title. Barbara

6

Rozzelle became his immediate supervisor. (JA65-69). This was Appellant's final position until he was terminated on August 16, 2010. (JA-76, 270).

On May 29, 2009, Appellant's direct supervisor, Rozzelle, learned that he was Jewish at a service event for Legal Aid of North Carolina. At the event, staff of Legal Aid began praising Appellant for the work and service he had given to Legal Aid. (JA328-330). Referring to Appellant, someone commented in front of the crowd, "God loves Jews that help others," to which another person retorted, "God loves Jews that make money when they help others." (JA328). Appellant understood this as an old Jewish joke and didn't think much about it. (JA328). Appellant did remember, however, that his supervisor Rozzelle was present, heard it, and laughed at the joke. (JA330). After hearing these comments, Ms. Rozzelle also commented that she also enjoyed working with Baldwin. (JA328).

After hearing the joke, Rozzelle's attitude towards Appellant changed and she began treating him poorly, becoming increasingly hostile and critical (JA271-278, 283-287, 344, 911-15). Rozzelle, for example, thereafter accused Appellant of stealing equipment, provided him with a negative performance review, told his peers that he was not doing a good job, delayed approval of his return to work form after his surgery, and told Appellant's peers that he was having a sex change operation. (*Id.*).

In October 2009, Appellant took approved Family Medical Leave to have necessary surgery related to his cancer (JA-610). Appellant was to start work upon submission of a "Return to Work form" finalized by Rozzelle. She delayed turning in the form to human resources to delay Appellant's return to work. (JA69-70, 219, 912-13).

In January 2010, Appellant took a second FMLA leave for another cancer-related surgery, and he did not return to work until March 19, 2010. JA600-611, 701-11). It is precisely during this time that Appellees began a continuing course of harassment that continued until his termination only five months later. Appellant's supervisor refused to return Appellant's Return-to-Work form in a timely manner, shut down Appellant's Log-In and User ID, told people he was out of work for a "sex change" operation, told co-workers that he had tried to date her, asked for carte blanche access to his medical records, cleared out his belongings from his cubicle, falsely called into question his competency with the SourceSafe process, told co-workers he was sneaky, and blocked his attempts to transfer to a different department (JA 276-278).

Plaintiff also testified that Diana Williamson told him someone heard his supervisor state that "Plaintiff's FMLA leaves were a scam between Plaintiff and his Jewish doctors and that they all (Jews) all [sic] stick together." (JA233, 344). Also, in a May10, 2010 email, Appellees' human resources manager martin

instructed Appellant's manager Johnston to "keep the heat on" on Appellant.
(JA1735).

In May 2010, Appellant filed a complaint concerning his treatment by
Rozelle with Carl Robinson, Appellee Vice President, concerning the treatment he
had received. Robinson responded that a full investigation would occur. (JA439,
752, 954-57). In June 2010, Appellant filed another complaint, this time with
Mark E. Manley, Chief Legal Officer for Duke Energy Corporation. Importantly,
the high-ranking Manley then instructed Appellant that all communication should
be handled between Appellee's corporate counsel and Appellant's attorney (Meg
Maloney) (JA54 (¶ 111), 76 (¶ 111), 402-406).

During the last few months of his employment, Baldwin was "performing a
critical implementation." (JA-738-41). His project was absolutely necessary for
every nuclear facility and was one of Appellee's "top priorities" (*Id.*). He
continued to work long hours from home, and his team successfully completed the
major project July 30, 2010 (JA73, 711, 1401-02, 1460).

At this very same time, after Appellee's Chief Legal Officer Manley had
indicated that all communications regarding accommodations for his disability
should be handled through the parties' attorneys (JA54 (¶ 111), 76 (¶ 111), 402-
406), Appellant's attorney Maloney was involved in email communications with
Appellees, and both sides were indicating that they would be communicating and

9

providing further information to each other. (JA-709-710). On August 2, 2010, Appellant was contacted by human resources' Debbie Patton, who informed him that he needed to return to work in the office the next day, despite his medical restrictions. (JA401). Appellant informed Patton that he was directed by Manley to only take directions from his attorney through Appellee's legal counsel. (JA401). No one ever advised Appellant that his medical restriction (JA608) directing him to work from home had been considered by other healthcare professionals, rescinded, superseded, or modified in any manner.

Over the next several days, Appellant continued to work from home and maintained contact with Manager David Johnston, who never mentioned that Appellant should report to the office. (JA827). Appellant continued to work from home; as opposed to simply not working (JA744), and he was taking assignments from his two direct supervisors and continued his normal work activities. (JA406).

On August 6, 2010, Kathleen McKay, associate general counsel, and Meg Maloney, Baldwin's attorney, engaged in an e-mail conversation concerning this matter. (JA707-711). McKay informed Ms. Maloney that Appellant did not arrive for work in the office on August 4, 2010, as requested by Ms. Patton. Appellant's attorney Maloney clarifies:

Return from Work:

Mr. Baldwin submitted his form on July 13th, two days in advance of the deadline. The restrictions were extended through August 19th, the

10

next time he sees his physician.  Are there any issues here?  Is there a way to simplify the documentation process for accommodations Mr. Baldwin needs for disabilities?

(JA-710).  In this communication, Maloney advised of the work restriction and asked whether the restrictions were somehow problematic, inquired about accommodating Appellant's disability, and asked for further discussion that day. (JA-711).     The record does not reveal that McKay ever called or appropriately responded to Maloney's inquiries (JA707-711).  Instead of engaging in the interactive process contemplated by the ADA (*see* 29 C.F.R. § 1630), Appellees apparently ignored Maloney's inquiries, ceased all further communication with Appellant and his attorney on the subject, and then summarily terminated Appellant on August 16, 2010 (JA76, ¶¶105-06).

## SUMMARY OF ARGUMENT

Appellant contends the district court erred in granting summary judgment for the Appellees, as there is ample evidence in the record supporting Appellant's claims for disability discrimination and failure to accommodate, retaliation for taking FMLA leave, and retaliation for complaining about religious and disability discrimination.  Questions of fact exist on whether Appellant had been performing satisfactorily before he engaged in protected activity.  Further, questions of fact remain on whether or not Appellees ignored Appellant's valid work restrictions provided by his physician (JA608) and intentionally refused to engage in the

11

interactive process contemplated by the ADA, for whether, as Appellees contend, that they clearly communicated to Appellant in a non-ambiguous manner by an employee with sufficient authority that Appellant needed to physically show up at his office, and that such request was valid under the ADA given the contradictory instructions from his physician.

## ARGUMENT

## I.    STANDARD OF REVIEW.

The Court reviews de novo an award of summary judgment. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994).  In so doing, the Court stands in the same position as the district court, and should uphold an award of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

It is well-established that a motion for summary judgment cannot be granted unless the moving party meets its burden of showing that no genuine factual dispute exists.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Berwick v. Celotex* Corp., 736 F.2d 946, 958 (4th Cir. 1984).  Here, that burden rests with the Appellees.  Moreover, the Court is required to give credence to all evidence favorable to the non-movant and "must disregard all

evidence favorable to the moving party that the jury is not required to believe."
*Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133, 151 (2000); *see Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 438 (4th Cir. 1998).  Thus, Appellees' evidence cannot be credited unless it comes from disinterested witnesses and is otherwise neither contradicted nor impeached.  *See Reeves,* 530 U.S. at 151.  Indeed, the standards that govern motions for summary judgment under Fed. R. Civ. P. 56 are rigorous.  "[A] motion for summary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." *Campbell v. Hewitt Coleman & Assoc.,* 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.,* 381 F.2d 245, 249 (4th Cir. 1967)).

The Fourth Circuit has emphasized that summary judgment is particularly inappropriate in discrimination cases where intent is at issue.  *Beall v. Abbott Labs.* 130 F.3d 614, 619 (4th Cir. 1997); *accord Harmer v. Virginia Elec. & Power Co.,* 831 F. Supp. 1300, 1305 (E.D. Va. 1993) (citing *Ballinger v. North Carolina Agric. Extension Serv.,* 815 F.2d 1001, 1004-05 (4th Cir. 1987) ("especially in an employment discrimination case, where the employer's state of mind and motive are often critical determinations, a [C]ourt must find that it is perfectly clear that there are no genuine issues of material fact before granting summary judgment")).

In assessing inferences in the light most favorable to the plaintiff, it is essential to give full consideration to circumstantial evidence. As Justice Thomas pointed out, writing for a unanimous Court in *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 100 (2003):

> We have often acknowledged the utility of circumstantial evidence in discrimination cases.  For instance, in *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147 L.Ed.2d 105, 120 S. Ct. 2097 (2000), we recognized that evidence that a defendant's explanation for an employment practice is "unworthy of credence" is "one form of *circumstantial evidence* that is probative of intentional discrimination." *Id.* at 147, 120 S. Ct. at 2097 (emphasis added). The reason for treating circumstantial and direct evidence alike is both clear and deep-rooted: "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Rogers v. Missouri Pacific R.* Co., 352 U.S. 500, 508, n.17, 77 S. Ct. 443, 1 L.Ed.2d 493 (1957).

The "court is obliged to credit the factual assertions contained in the material before it which favor the party resisting summary judgment and to draw inferences favorable to that party if the inferences are reasonable (however improbable they may seem)." *Cole v. Cole*, 633 F.2d 1083, 1092 (4th Cir. 1980).

## II.    APPELLANT AMPLY DEMONSTRATES RETALIATION PROHIBITED BY THE FMLA.

The Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, includes two distinct categories of protections. *See King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir.1999).  The first category includes a series of provisions which, taken together, propound a number of substantive entitlements.

The second category of FMLA rights protects qualified employees from discrimination for exercising or enforcing the rights contained in the first category. *See* 29 U.S.C. § 2615(a)(1) & (2); *see also* 29 C.F.R. § 825.220(c) (1998) ("An employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave.").

FMLA claims arising under the retaliation theory are analogous to those derived under Title VII and so they may be analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973). *See Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001). Appellant may prove a discriminatory motive by circumstantial evidence. Thus, a plaintiff may succeed on a retaliation claim by showing:

(1) that he or she engaged in FMLA-protected activity;

(2) that the employer took an adverse employment action against the plaintiff; and

(3) that there is a causal connection between the plaintiff's protected activity and the employer's adverse employment action.

*Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir.1998). If the plaintiff "puts forth sufficient evidence to establish a prima facie case of retaliation" and the defendant "offers a non-discriminatory explanation" for his termination, the

plaintiff "bears the burden of establishing that the employer's proffered

explanation is pretext for FMLA retaliation." *Nichols*, 251 F.3d at 502.

### A.    APPELLANT ENGAGED IN PROTECTED ACTIVITY.

Here, there is no dispute that Appellant applied for and went on FMLA leave

-- this is the paradigmatic activity upon which most FMLA claims rest.

### B.    APPELLANT SUFFERED ADVERSE EMPLOYMENT ACTIONS.

Likewise here, there is no disputing that Appellant's termination constitutes

an adverse action.  Further, the termination was just a culminating event of a

continuing course of retaliation that continued from the time Appellant exercised

his FMLA rights.  Appellant took FMLA leave in late 2009 and in early 2010,

returning to work March 19, 2010.  At that time, Appellees supervisor engaged in

harassment; while none of the acts by themselves might constitute an "adverse

employment decision,"[1] their cumulative effect belies a change in attitude toward

Claimant that continued until his termination.

In *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006), the

U.S. Supreme Court set forth its definition of an adverse employment action:

> a plaintiff must show that a reasonable employee would have found
> the challenged action materially adverse, " which in this context
> means it well might have 'dissuaded a reasonable worker from

---

[1] *See* JA276-78.  An intentionally poor review that was ultimately corrected, and
Rozelle's blocking Appellant's transfer at the same time is apparently unsatisfied
with his performance could constitute adverse employment decisions.

16

> making or supporting a charge of discrimination.'" *Rochon*, 438 F.3d
> at 1219 (quoting *Washington*, 420 F.3d at 662).

*Id.* Here, obviously the termination constitutes an adverse employment action. But

the continuing course of harassment also had a materially adverse effect on

Appellant's working conditions such that a reasonable worker would have been

dissuaded from similar conduct.

### C. TEMPORAL PROXIMITY BETWEEN PROTECTED ACTIVITIES AND ADVERSE EMPLOYMENT ACTIONS SUFFICIENT TO DEMONSTRATE CAUSAL CONNECTION AND BUTTRESSED BY OTHER EVIDENCE.

Here, it is important to note that Appellant engaged in several protected acts:

his first FMLA leave in 2009, his second FMLA leave from which he returned in

March 2010, and his complaints to management that he felt he was being harassed

and discriminated against because of his exercise of FMLA rights, which occurred

from April through June 2010. His complaints were still being investigated at the

time of his termination. Appellant's protected activities permeated his last few

months of work, after 16 years of steady, commendable work for Appellees.

Appellant submits that the ongoing protected activities and parallel adverse

employment actions are have a sufficient temporal proximity to satisfy the causal

connection requirement. Further, appellant has established evidence of a negative

animus. Members of Appellees' management team commented that they believed

Appellant's FMLA leave was a "scam" perpetuated by Appellant's doctors, who

17

they also denigrated. They refused to Appellant's Return-to-Work paperwork, and then subjected it to intense scrutiny.[2]

The District Court apparently determined that three months had elapsed from the time of Appellant's last protected activity until the adverse action, termination, and it opined that the length of time "weakened" the inference that timing of the termination suggested it was related to Appellant's protected activities. Appellant respectfully suggests that both the protected activities and the adverse actions were continuing and overlapped, thereby establishing a much stronger inference that they are connected.

Further in assessing whether a causal connection exists, temporal proximity cannot be viewed in a vacuum. It is appropriate to consider the Appellees comments and actions that display a negative animus toward Appellant's protected activities, exercising his right to leave under the FMLA. While the evidence of negative animus may not be sufficient to establish or constitute "direct evidence" of discrimination sufficient to remove us from the *McDonnell-Douglas* framework, it should not be ignored either. When the overlapping temporal proximity is considered along with evidence of a negative animus, Appellant more than satisfies

---

[2] Although Appellees questioned Appellant's Return-to-Work restrictions, there is no evidence that any aspect of it was considered or reviewed by any healthcare professional or that any decision was made that would validly to "repeal, trump, or overrule" Appellant's Return-to-Work restrictions. To date, Appellees have offered no explanation of what authority they rely on to simply ignore Appellant's Return-to-Work restrictions, and unilaterally impose contradictory conditions.

his burden of showing that a fact question exists as to whether the adverse

employment actions, including  the termination, are causally connected to

Appellant's FMLA leave and later complaints.

### D.    DISTRICT COURT ERRED IN MAKING FINDING OF INSUBORDINATION AND IN WITHDRAWING ISSUE FROM JURY'S CONSIDERATION.

On pages 15-17 of the lower court's opinion (JA1735-37), the court errs in

finding reasons to discount the causal connection established.  First, the Court

appears to apply a "but-for" causation, and then it considers two factors that it

concludes eviscerate the causal connection to the point that there no longer remains

a question for the jury.  First, the court considered minor "areas for improvement"

that had been noted in Appellant's good performance reviews, and concluded that

such references – even in the absence of any verbal warnings, written warnings, or

other disciplinary measures – conclusively established a history of prior

"performance" issues such that it was no longer a jury question whether or not

Appellant was performing satisfactorily before he engaged in protected activities.

Second, the lower court adopted Appellees' argument that in following the

instructions of his Appellees own Chief counsel, his own counsel, and his

unabrogated Return-to-Work restrictions, appellant somehow engaged in an act of

"insubordination" conclusively establishing Appellees' justification in terminating

him.  Appellant respectfully disagrees the lower court's conclusions.

19

First, it is questionable whether a "but-for" causation is appropriate in an

FMLA retaliation case:

> The Fourth Circuit has not determined whether plaintiffs in FMLA
> retaliation cases must prove but-for causation to prevail, cf. *Univ. of
> Tex. Sw. Med. Ctr. v. Nassar,* 133 S. Ct. 2517, 2528, 186 L. Ed. 2d
> 503 (2013) (but-for causation required to prevail on retaliation claim
> under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et
> seq.*); *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 180, 129 S. Ct.
> 2343, 174 L. Ed. 2d 119 (2009) (but-for causation required to prevail
> on ADEA claim), or whether retaliation must be only a motivating
> factor in the employer's termination decision, cf. *Price Waterhouse v.
> Hopkins,* 490 U.S. 228, 258, 109 S. Ct. 1775, 104 L. Ed. 2d 268
> (1989) (superseded by 42 U.S.C. § 2000e-2(m)) (recognizing mixed-
> motive cause of action under Title VII). See *Averette v. Diasorin, Inc.,*
> No. 3:11CV203, 2011 U.S. Dist. LEXIS 93761, 2011 WL 3667218, at
> *3 (W.D.N.C. Aug. 22, 2011) (noting the lack of Fourth Circuit
> precedent).

*Hughes v. B/E Aerospace, Inc.*, No. 1:12-cv-717, 2014 U.S. Dist. LEXIS 29535

(M.D.N.C. Mar. 7, 2014).  Appellant submits that the "motivating factor" test is

the appropriate standard.

The protections against retaliation are quite broad.   29 C.F.R. § 825.220(c)

states that employers are "prohibited from discriminating against employees or

prospective employees who have used FMLA leave" and that "employers cannot

use the taking of FMLA leave as a negative factor in employment actions, such as

hiring, promotions, or disciplinary actions."  *Id.*  Courts have recognized that the

FMLA provides a cause of action for retaliation.  *Dotson v. Pfizer, Inc.*, 558 F.3d

284, 294-295 (4th Cir. 2009), *cert denied*, 130 S. Ct. 114 (2009); *Blankenship v. Buchanan Gen. Hosp.*, 140 F. Supp.2d 668, 671-72 (W.D. Va. 2001).

Courts have recognized that the FMLA anti-retaliation provisions should be broadly interpreted to effect the statute's remedial purpose. "It is a 'familiar canon of statutory construction that remedial legislation,' " such as the FMLA, "should be construed broadly to effectuate its purposes.' " *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 164 (1st Cir. 1998) (quoting *Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S. Ct. 548, 19 L.Ed.2d 564 (1967)).

More importantly, under either standard, the factors referenced by the Court where contested fact issues and should not have been considered "established" by the Court but should have been left for the jury to determine.

Regarding stray comments in the "Areas for Improvement" section of the otherwise very favorable annual performance reviews, these references in no way "establish" a past history of performance issues. The performance appraisals themselves were very good. A manager would not being doing a good job if they did not identify upcoming challenges or ways in which an employee could improve. Those areas for possible improvement, however, do not establish poor performance. Especially here, where the record is devoid of any verbal warnings, counseling sessions, written warnings, or other common indicators of poor performance.

Virtually every corporate employee will have various conduct-related items listed in an "Areas of Improvement" section. Certainly, this does not grant every employer a "Get Out of Jail Free Card" in regard to any possible future claims of retaliation made by the employee?

To the contrary, at best such stray remarks may present a fact question for the jury as to the employee's performance, but in no way do they establish that the employee had a past performance record so egregious that under no facts could the employee prove a satisfactory prior performance.

Likewise, the lower Court discounted Appellant's facts surrounding why he failed to return to the office in August 2010. Again, when all the facts are considered there exists a least a fact question whether or not Appellant's working from home was an act of insubordination. The lower Court falied to consider these salient facts that call into question whether appellant – or anyone from Appellees – could consider his working at home an "act of insubordination:

• Appellant's valid Return-to-Work form advising him *and* his employer that he should continue to work from home through August 19, 2010;

• Appellee's own Chief Legal Counsel had advised Appellant that he should "let the lawyers" handle all aspects of his returning to work;

• Appellant himself responded back to the email expressing the expectation that he return to the office, and Appellant advised he was under the impression that

22

the lawyers were addressing and handling the matter (and he would follow their direction);

• the ADA's mandate that when an employer is presented with a request for an accommodation, it should engage in an interactive process with the employee (or his or her counsel) to determine appropriate accommodations;

• Appellant counsel's email eleven (11) days before his termination inquiring about the valid Return-to-Work restrictions and essentially requesting to engage in the required ADA interactive process;[3]

• Although Appellees' counsel indicates she will "fully respond in a few business days," there was never any such response in the consequent days.

Under these circumstances, it was reasonable for Appellant to believe that the lawyers were engaging in the interactive process, that he should follow the valid restrictions, and that the instruction from Appellees' Chief Legal Counsel outweighed the expectations expressed from assistant counsel to Appellant's counsel.

---

[3] Although Appellees replied to Appellant counsel's email, the decision to terminate Appellant had already been made.  The email simply reply restated the expectation that Appellant return to the office; when Appellant's counsel inquired again about the valid work restriction, she was for the first time advised that Appellee had found some physician documentation to be inadequate.

23

## III.  APPELLANT ESTABLISHES ADA VIOLATIONS BASED ON PERCEIVED DISABILITY.

Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to ... discharge of employees ... and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  To establish a prima facie case of discriminatory firing under Title I, a plaintiff must prove: (1) he has a "disability"; (2) he is a "qualified individual"; and (3) in "discharging [him], [his] employer discriminated against him because of his disability." *Martinson v. Kinney Shoe Corp.,* 104 F.3d 683, 686 (4th Cir.1997) (citation omitted) (discussing section 12112(a)).

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).  Under an amendment to the ADA which became effective on January 1, 2009, an employee is regarded as disabled "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. §12102(3)(A).1 "In other words, an employee may be 'regarded as disabled' if discriminated against because of an actual or perceived impairment regardless of whether it has any disabling effect....It is enough that the perceived

impairment is perceived to 'limit' (not 'substantially limit') a major life activity."
Rosen, Rothstein, Aspen, et al., RUTTER GROUP PRAC. GUIDE: FEDERAL
EMPLOYMENT LITIGATION (The Rutter Group 2012).

The ADA definition of "major life activity" specifically includes reading,
concentrating, thinking, communicating, working, and the operation of major
bodily functions including normal cell growth. 42 U.S.C. § 12102(2).
Taken as true and construed in the light most favorable to the Plaintiff, the facts
asserted by Appellant raise a reasonable inference that the Appellees' managers
discriminated against Appellant because they perceived that his cancer limited the
major life activities of concentrating, thinking, communicating, working, and
normal cell growth. 42 U.S.C. § 1202(3)(A). While Appellant was away, his
supervisor Rozelle removed belongings from his cubicle, told co-workers that he
would not be returning to work, and impeded his return to work.  She also gave
Appellant an unfavorable and allegedly false performance review which differed
from an earlier interim review that he had received before his superiors learned of
his illness. For these reasons, and the other reasons set forth in Plaintiff's brief, the
undersigned respectfully recommends that Defendants' Motion to Dismiss
Plaintiff's ADA claim be denied.

Moreover, under the ADA an Employer is required to engage in an
interactive process to determine the suitability of proposed accommodations.

25

Here, Appellees did not do so but rather made unilateral determinations without any advice form a healthcare provider.  As Appellees had no access to Appellant's medical records, any supposition by them – again without any input form a healthcare provider – was pure speculation and improper.  They had no basis for making any conclusions about why Appellant's physician restricted him to work from home, let alone any basis for rejecting that restriction and unilaterally fashioning -- or purporting to fashion – their own.  Thus, the termination based on Appellant's following his physician's directive was clearly violated the ADA.

The District Court erred in equating and limiting Appellees' perception of disability solely to that of being unable to sit for more than 30 minutes, and concluding that was a temporary condition.  To the contrary, it was undisputed that Appellees recognized that Appellant had cancer and that he had taken two FMLA leaves of absence for surgeries related to his cancer.  They discussed his likelihood of developing leukemia, chemotherapy, and need for future testing.  Unquestionably, the cancer suffered by appellant constitutes a disability, and certainly the ongoing treatment raises a question of fact whether Appellees perceived a disability with broader consequences than just a limitation on sitting.

## IV. APPELLANT ESTABLISHES TITLE VII RELIGIOUS DISCRIMINATION CLAIM.

In their Answer to the Amended Complaint, Appellees admitted that Appellant is Jewish (JA-65, ¶ 3), and appellees have not amended that Answer in

26

any regard.  As such Appellant establishes that he is a member of the protected class.   Appellant also presented sufficient evidence establishing that Supervisor Rozelle was present, heard, and responded to a joke that revealed that Appellant is Jewish.  These facts are sufficient establish that the decisionmakers were aware of appellant's religion.   Further, there were several comments attributed to Appellees' management that displayed a negative animus toward the Jewish faith.

Appellant respectfully submits that the District Court erred in suggesting further proof was required to establish that Appellee's decisionmakers knew Appellant was Jewish.  As such, summary judgment was granted on an improper ground, and should be reversed.

## CONCLUSION

Because Appellant presented sufficient evidence of all the necessary elements of an ADA claim and retaliation claims under the FMLA and Title VII, the Court should reverse the district court's grant of summary judgment.

Appellant respectfully requests oral argument in this case.

Respectfully submitted, this the 24th day of April, 2013.

OF COUNSEL:
HIGGINS BENJAMIN, PLLC                    _/s/Jon Wall_____
101 W. Friendly Ave., Suite 500           Jonathan Wall
Greensboro, NC  27401                     (NC State Bar #22839)
(336) 273-1600
fax: (336) 274-4650
e-mail: jwall@greensborolaw.com


OF COUNSEL:
LOVE & DILLENBACK, PLLC                   _/s/ Kenneth Love_____
P.O. Box 779                              Kenneth Love
Rural Hall, NC  27405                     (N.C. State Bar #37700)
(336) 210-1853
Email: kennethl@ldlawnc.com               *Attorneys for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
**CERTIFICATE OF CONFIDENTIALITY, LOCAL RULE 25(c)**

No. _____      Caption: _____

_____
(appellant, appellee, petitioner, respondent, other)

certifies the following information regarding sealing of the document(s) described below:

1. Identify document(s) filed (e.g., sealed appendix volume, sealed version of brief):

_____

2. Is sealing of document(s) necessary?

[  ] No
[  ] Yes, to protect material sealed under the Privacy Policy for Electronic Case Files, or
       by statute, rule, regulation, or order

3. Date(s) of order(s) sealing the material or, if there is no order, the authority relied upon to treat the material as sealed:

_____
_____

4. Terms of order sealing the material, including who is permitted access to sealed material (if filed ex parte, document must be marked SEALED and EX PARTE):

_____
_____

5. (For SEALED APPENDIX)  Sealed record material has been separated from any unsealed record material and placed in a separate, sealed volume of the appendix.

[  ] Yes

6. (For SEALED BRIEFS, SEALED DOCUMENTS)  Two versions of document are filed: Sealed version with sealed material highlighted and public version with sealed material redacted.

[  ] Yes


_____            _____
        (date)                                              (signature)


02/05/2014  SCC

# CERTIFICATE OF SERVICE

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____                    _____
         Signature                                                                                Date